# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOON EXPRESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTUITIVE MACHINES, LLC, <br><br> Defendant. | C.A. No. 16-344-LPS |

## **MEMORANDUM ORDER**

Having reviewed the proposed final pretrial order and exhibits to it (D.I. 113) ("PTO"), submitted by Plaintiff Moon Express, Inc. ("ME") and Defendant Intuitive Machines, LLC ("IM"), IT IS HEREBY ORDERED that:

1. ME's motion in limine ("MIL") #1, to preclude testimony regarding value received by ME, is DENIED. The Court is not persuaded that the evidence in dispute constitutes "improper and unreliable lay opinion testimony." (D.I. 113-4 at page 3 of 261) Nor does the testimony seemingly contemplated by IM appear to constitute undisclosed expert opinion or testimony lacking adequate personal knowledge.

2. ME's MIL #2, to preclude introduction of testimony and evidence of consequential damages by IM, is DENIED. ME contends that the parties' Master Purchase, Development, and Manufacturing Agreement ("TRV Contract") unambiguously bars consequential damages and, therefore, the $70,000 IM seeks for "expenses and employee time winding down TRV project" after ME's alleged breach is barred. IM counters that these are instead "direct damages," as the $70,000 was incurred solely as a result of winding down

1

activities that were necessitated by ME's retention of IM pursuant to the TRV Contract. In turn, ME questions the credibility of IM's position, pointing to evidence that IM continued working on the TRV project after it knew ME had breached and/or terminated the TRV Contract. The parties' competing positions turn not on the contractual provision but, rather, on disputed, reasonable inferences that may be drawn from the evidence. Accordingly, the parties will be permitted to present their dispute (i.e., whether the $70,000 were consequential damages, and barred by the contract, or were direct damages, and therefore recoverable) to the jury.

3. ME's MIL #3, to preclude extrinsic evidence concerning interpretation of the TRV Contract, is DENIED. IM's MIL #3, "to establish the meaning of certain unambiguous contract terms and to preclude [Plaintiff] from presenting extrinsic evidence contradicting the plain meaning of those terms," is DENIED as well. Substantively, the motions overlap (at least in part), and procedurally they suffer from the same flaw: both seek relief well beyond what the undersigned Judge is prepared to provide on a motion *in limine*.

In its motion, ME asserts: "Since the TRV Contract [and particularly Section 3.3, relating to "IP Conveyance"] is unambiguous, Defendant should not be permitted to introduce at trial prior drafts, witness testimony, or other extrinsic evidence for purposes of construing its provisions." (D.I. 113-4 at page 106 of 261) IM responds that "[some] terms in the TRV Contract [including Section 3.3] are reasonably susceptible to different interpretations, and thus ambiguous." (*Id.* at page 144 of 261; *see also* D.I. 113-5 at p. 166 of 262 (IM contending "[s]ome of the terms" in the TRV Contract "are unambiguous and should be interpreted by the Court in advance of trial to narrow the scope of issues to be determined"); *id.* at page 217 of 262 (ME apparently agreeing))

2

Neither party chose to file a motion for summary judgment (or partial summary judgment) based on the purported lack of contractual ambiguity. (*See* D.I. 35 ¶ 11 (scheduling order setting original deadline for case dispositive motions ("CDM")); D.I. 89 (requesting extension of CDM deadline, which was subsequently granted)) This Court is not in a position to evaluate and resolve what are, in effect, multiple motions for partial summary judgment in the context of a MIL,[1] that is filed the week before the pretrial conference ("PTC") and less than a month before trial, and is subject to strict page limits (3 pages, 3 pages, and 1 page). *See generally Bradley v. Pittsburgh Board of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) ("Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."). The parties shall be prepared to discuss at the PTC how, if at all (and, if so, on what timing), the Court can, should, or must assess whether any contractual provisions are not ambiguous.

4. IM's MIL #1, to preclude certain testimony by ME witnesses as purportedly being "hybrid" fact and opinion (or lay and expert) testimony, is DENIED. IM's request is overbroad; no basis appears from the record for the sweeping relief it seeks. Should IM have objections to specific questions at trial – for example, that the witness lacks personal knowledge or the

---

[1] IM's MIL #3 seeks determinations that three provisions of the TRV Contract – relating to ME's obligation to pay monthly invoice amounts, the "1st Drop Test Complete" milestone, and Section 6.4's reference to "TRVs" – are unambiguous. One could call this three separate motions. ME's MIL #3, in seemingly asking the Court to rule that every provision of the TRV Contract is unambiguous, could easily and accurately be viewed as a very large number of partial summary judgment motions. Nonetheless, the Court has chosen to exercise its discretion *not* to deny any of either party's MILs on the basis that they violate its limit of three MILs per side. (*See* D.I. 35 ¶ 14)

3

question calls for a legal conclusion or is irrelevant – IM may object during trial.

5. IM's MIL #2, to exclude evidence of ME's subjective, uncommunicated understanding of ambiguous contractual terms, is DENIED. IM recognizes that at least one exception to the premise of its motion (i.e., the "forthright negotiator principle") exists, and the Court will need to wait until trial to evaluate the applicability of this exception on a witness-by-witness, question-by-question basis. Also, as noted above, the Court is not at this point making a determination as to whether any provision of the disputed contracts is unambiguous. The Court is not persuaded on the present record that any of the concerns of Rule 403 would favor exclusion of the evidence that is the subject of this motion, particularly as the Court is inclined to agree with ME that evidence of business and industry practice will be relevant and admissible, and further that IM's concerns are best addressed through jury instructions. Finally, the applicability of decisions from the Delaware Court of Chancery, necessarily arising in the context of non-jury proceedings, to the evidentiary disputes that are the proper subject of a MIL relating to a jury trial is unclear.

6. The parties shall be prepared to discuss at the PTC the specific portions of depositions they intend to read or play for the jury, any specific objections to any such designated testimony, and a procedure and timing for resolving any such disputes. (*See* PTO at 62)

7. The Court understands PTO Exhibits A-C to be the maximum universe of exhibits either party intends to introduce into evidence, as well as the maximum universe of objections to admissibility of such exhibits. (*See* PTO at 63) If, after further meet and confers, including after disclosure of which exhibits will be used in connection with direct examination (*see id.*) there remain unresolved objections, the parties must bring such objections to the Court's attention on

4

the morning of the day the parties anticipate the exhibits to first be used. Failure to present these objections to the Court at this time will result in waiver of the objections. The same procedures apply to demonstrative exhibits. (*See* PTO at 63-64)

8. The amount of trial time allocated to each side will be equal (*see* PTO at 66), and the parties shall be prepared to request, at the PTC, a specific number of hours, taking account of how the Court counts time and the fact that during a typical jury trial day we can usually get in 5 ½ to 6 ½ hours.[2] Based on its current understanding of the factual and legal disputes, as well as the apparent number of witnesses and exhibits to be presented, the Court anticipates providing each party 9 or 10 hours for its trial presentation. The Court will make a final determination on the number of hours at or after the PTC.

Wilmington, Delaware
December 14, 2017

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT

---

[2]http://www.ded.uscourts.gov/sites/default/files/Chambers/LPS/PatentProcs/LPS-PatentProcedures.pdf at p. 9