## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOON EXPRESS, INC., | : | |
| | : | |
| Plaintiff, | : | C.A. No. 16-344-LPS |
| | : | |
| v. | : | |
| | : | |
| INTUITIVE MACHINES, LLC, | : | |
| | : | |
| Defendant. | : | |

## FINAL JURY INSTRUCTIONS

## INTRODUCTION

Members of the jury, now that you have heard all of the evidence and arguments of counsel in this case, it is time for me to instruct you about the law that you must follow in deciding this case.

Please listen very carefully to everything I say.

You will have your written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions you must answer to decide this case.

**EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony), the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.  The notes taken by any juror are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must follow my orders and completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record.  You must follow my instructions to completely disregard such things you saw or heard, and completely ignore those things struck from the record.  Do not even think about them.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**USE OF NOTES**

You may use notes taken during trial to assist your memory.  Remember that your notes are for your own personal use.  They are not to be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## DEPOSITION TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.  The deposition may also be recorded on videotape.

During the trial, certain testimony was presented to you by the reading of a deposition transcript and by the playing of segments of videotaped deposition testimony.  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

In this case, you were read and/or shown deposition testimony of individual witnesses as well as deposition testimony of the defendant company, Intuitive Machines.  For certain identified issues, Intuitive Machines chose two officers of the company, Steven Altemus and Timothy Crain, to testify and speak as representatives of the company.  Mr. Altemus and Mr. Crain also testified as individual witnesses, not in the capacity as representatives of Intuitive Machines.  When Mr. Altemus and Mr. Crain were specifically testifying on behalf of Intuitive Machines, their testimony should be considered to be the company's testimony, and you should consider and weigh the deposition testimony in the same way as you would the testimony of a witness who has testified in court.

## USE OF INTERROGATORIES

You may have heard answers the parties gave in response to written questions submitted by the other side.  The written questions are called "interrogatories."  The written answers were given in writing and under oath, before trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

**PRIOR SWORN STATEMENTS**

If you find that a witness made an earlier sworn statement that conflicts with the witness's trial testimony, you may consider that contradiction in deciding how much of the trial testimony to believe.  You may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation made sense to you.

Your duty is to decide, based on all the evidence and your own good judgment, whether the earlier statement was inconsistent; and if so, how much weight to give to the inconsistent statement in deciding whether to believe the earlier statement or the witness's trial testimony.

**PRIOR INCONSISTENT STATEMENT BY A WITNESS**

A witness may be discredited by evidence contradicting what that witness said, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

It's up to you to determine whether a witness has been discredited, and if so, to give the testimony of that witness whatever weight that you think it deserves.

**CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY**

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witnesses' biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you may try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

## NUMBER OF WITNESSES

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**DEMONSTRATIVE EXHIBITS**

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits were offered to help illustrate the testimony of the various witnesses.  These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witnesses that you heard when you saw the demonstrative exhibits that is the evidence in this case.

## OBJECTIONS – RULING ON EVIDENCE

Lawyers have a duty to object to evidence that they believe has not been properly offered.  You should not be prejudiced in any way against lawyers who make these objections or against the parties they represent.  If I have sustained an objection, you must not consider that evidence and you must not speculate about whether other evidence might exist or what it might be.  If I have overruled an objection, you are free to consider the evidence that has been offered.

## PREPONDERANCE OF THE EVIDENCE

This is a civil case.  The plaintiff, Moon Express, has asserted claims against Intuitive Machines in this lawsuit.  Moon Express has the burden of proving its claims against Intuitive Machines by what is called the preponderance of the evidence.  That means Moon Express has to prove to you, in light of all the evidence, that what it claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to Moon Express and the evidence favorable to Intuitive Machines on opposite sides of the scales, Moon Express would have to make the scales tip somewhat on its side.  If Moon Express fails to meet this burden, the verdict must be for Intuitive Machines on Moon Express's claims.  If you find, after considering all the evidence, that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

Intuitive Machines has also asserted claims for relief against Moon Express in this lawsuit, called counterclaims.  On Intuitive Machines' counterclaims, Intuitive Machines has the same burden of proof as Moon Express has on its claims.  In other words, with respect to Intuitive Machines' counterclaims against Moon Express, Intuitive Machines must prove its case by a preponderance of the evidence.  If Intuitive Machines fails to meet this burden, the verdict must be for Moon Express on Intuitive Machine's claims.  If you find, after considering all the evidence, that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, Intuitive Machines and Moon Express have the burden of proving the elements by clear and convincing evidence.  I will instruct you on the specific issues that require a showing of clear and convincing evidence.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof and it applies only to criminal cases.  It does not apply in civil cases such as this.  So you should put it out of your mind.

## CLEAR AND CONVINCING EVIDENCE

As I mentioned, certain claims and defenses must be proved by clear and convincing evidence. Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. To establish proof by clear and convincing evidence means to prove something that is highly probable, reasonably certain, and free from serious doubt. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

## THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

The plaintiff in this case is Moon Express, Inc.  I will refer to them as "Moon Express" or "ME."

The defendant in this case is Intuitive Machines, LLC.  I will refer to them as "Intuitive Machines" or "IM."

## CORPORATIONS AND THEIR AGENTS

Both parties in this case are companies:  Moon Express is a corporation and Intuitive Machines is an LLC (limited liability company).  A corporation or LLC is considered a person within the meaning of the law.  As an artificial person, a corporation or LLC can only act through its servants, agents, or employees.  If you find that any of a party's officers, directors, agents or employees made statements to the other while acting within the scope of their duties, then you should find that the party made those representations.

The fact that a party is a corporation or LLC should not affect your decision in any way. All persons, whether corporate or human, appear equally in a court of law and are entitled to the same equal consideration.

## CONTENTIONS OF THE PARTIES

This case involves claims regarding two contracts between the parties.  First, this case involves a contract related to the design and manufacture of a terrestrial return vehicle, also known as a "TRV," capable of flight into space and controlled return to Earth.  This contract has been referred to as the "TRV Contract."  Second, this case involves a contract related to the development of software for Moon Express's moon lander spacecraft and systems.  This contract has been referred to as the "Flight Software Contract."

Plaintiff Moon Express has the following claims against IM in this case: (1) breach of the TRV Contract; (2) breach of the Flight Software Contract or, in the alternative; and (3) breach of the Implied Covenant of Good Faith and Fair Dealing with respect to the TRV.  Many of the following instructions will apply equally to ME's claims related to the Flight Software Contract and the TRV Contract, but I will point out to you when there are differences.

Defendant Intuitive Machines asserts the following claims against Moon Express in this case: (1) breach of the TRV Contract; and (2) breach of the Flight Software Contract.  As with Moon Express's claims, many of the following instructions will apply equally to Intuitive Machines' claims related to the Flight Software Contract and the TRV Contract, but I will point out to you when there are differences.

## BREACH OF CONTRACT

A contract is a legally binding agreement between two or more parties.  Each party to the contract must perform according to the agreement's terms.  A party's failure to perform a contractual duty constitutes breach of contract.  If a party breaches the contract and that breach causes injury or loss to another party, then the injured party may claim damages.

To prove a breach of contract claim under Delaware law, a party must establish (1) the existence of a contract; (2) breach of an obligation imposed by the contract; and (3) resulting damages.

In this case, Moon Express alleges that it entered into the TRV Contract and the Flight Software Contract with Intuitive Machines, that Intuitive Machines breached or violated the terms of these contracts, and that Moon Express has been harmed by Intuitive Machines' breach of the contracts.

Intuitive Machines has alleged as counterclaims that it entered into the TRV Contract and Flight Software Contract with Moon Express, that Moon Express breached or violated the terms of these contracts, and that Intuitive Machines has been harmed by Moon Express's breach of the contracts.

In considering these claims and counterclaims, you should look at each contract separately.  A party may prevail in its claim as to one contract whether or not it prevails in its claim as to the other contract.

## CONTRACT FORMATION

The parties have agreed that a legally binding contract existed between them related to the design and manufacture of a TRV, referred to as the "TRV Contract."  The parties have stipulated that the TRV Contract consists of the document signed on October 6, 2015, which is PTX00037, plus the amendment signed on January 18, 2016, which is JTX00045. You are instructed to take that as an established fact.  You need not determine whether the TRV Contract is an enforceable contract.

Although the parties both contend that a Flight Software Contract existed, they disagree about what documents and/or communications comprise the agreement.  Because this contract was not reduced to writing in a signed document like the TRV Contract, you must decide when the Flight Software Contract was formed and what the terms of the Flight Software Contract were before you decide whether it was breached.  The contract and its terms must be proved by a preponderance of the evidence.

For a legally binding contract to exist, there must be:

1)      an offer of a contract by one party;

2)      an acceptance of that offer by the other party;

3)      consideration for the offer and acceptance; and

4)      sufficiently specific terms that determine the obligations of each party.

In deciding which terms of the Flight Software Contract the parties agreed to, you should consider the written and spoken words of the parties, as well as the conduct and relationship of the parties and all the circumstances of the case.  Contracts can be made verbally or in writing.   Contracts can also be created by the conduct of the parties, without spoken or written words.  Contracts created by conduct are just as valid as contracts formed with written

or spoken words, and require the same elements as written or verbal contracts.

I will now read instructions regarding the elements of contract formation that I just listed.

**OFFER**

An offer is a display of willingness to enter into a contract on specified terms.  To constitute an offer, this display must be made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract.

## ACCEPTANCE

An acceptance of an offer is an agreement, either by express act or by conduct, to the precise terms of the offer so that a binding contract is formed.  If the acceptance modifies the terms or adds new ones, it generally operates as a counteroffer and a binding contract is not yet formed.  The acceptance must not be conditional on any further act by either party in order for a contract to be formed.

Generally, if a person does not say or do anything in response to another party's offer, then he or she has not accepted the offer.  However, when a person, through his or her conduct, leads the other party to conclude that the offer has been accepted, the offeree's silence or inaction will be considered an acceptance of the offer.

**CONSIDERATION**

Consideration is something of value received by someone which induces them to make a promise to the person giving the thing of value.  To be enforceable, a contract must be supported by consideration.  Consideration may include money, an act, a promise not to act, or a return promise, and it may be found anywhere in the transaction, whether or not it is clearly stated or  spelled out in writing as "consideration."

## MEETING OF THE MINDS ON ESSENTIAL TERMS

A legally binding contract requires that the parties manifest or show mutual assent to the contract's terms.  Mutual assent is not a subjective or personal understanding of the terms by either party.  Rather, mutual assent must be shown by words or acts of the parties in a way that represents a mutually understood intent.

Mutual assent requires an offer and an acceptance in which all of the essential terms of the proposal must have been reasonably certain and definite.  If any essential or key terms are not settled, there is no agreement.

A contract comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.

## CONTRACT MUST INCLUDE ALL ESSENTIAL TERMS

In order to be final and enforceable, a contract must contain all material or "essential" terms.  An agreement to agree in the future without any objectively reasonable controlling standards is not an enforceable contract.  A contract is not formed if the agreement is conditioned on the need for further negotiation of material terms.

It is when all of the terms that the parties themselves regard as important have been negotiated that a contract is formed.  If terms are left open or uncertain, this tends to demonstrate that an offer and acceptance did not occur.  If certain terms are left open for future negotiation, you must weigh the relative importance and severability of those terms in order to decide whether a binding contract exists.  If a term left open is so important to the bargain that enforcement of the agreement would be unfair, then no contract was formed.

In determining whether agreements reached were meant to address all of the terms that the parties regarded as important, you may consider all of the surrounding circumstances, including the course and substance of the negotiations, prior dealings between the parties, customary practices in the trade or business involved, and the formality and completeness of the document (if there is a document) that concludes the negotiations.  Until it is reasonable to decide, in light of all of the surrounding circumstances, that all of the points that the parties themselves regard as essential have been expressly or (through prior practice or custom) implicitly resolved, the parties have not finished their negotiations and have not formed a contract.

## CONTRACT MODIFICATION

When considering the parties' breach of contract claims for the Flight Software Contract, you may find that the parties entered into an enforceable Flight Software Contract before they negotiated the Statement of Work.  In that case, then you must decide whether the Flight Software Contract was modified by the Statement of Work.

Generally, a written contract may be modified by a later oral or written agreement.  A contract can also be modified by the parties' course of dealing.  Like any contract, an enforceable oral or written modification to a contract must be based on mutual assent and new consideration.

Even absent additional consideration, if there is evidence the parties reached a mutual agreement to modify the contract, and when a contract modification is fair and equitable based on circumstances not anticipated by the parties when the contract was made, or if justice requires enforcement of the modification because of material change of position in reliance on the promise, a modification may be binding.

## AUTHORITY TO MODIFY

In deciding whether the Statement of Work modified an earlier agreement by the parties, you must decide whether Moon Express agreed to the modification.  Intuitive Machines asserts that Moon Express agreed to the Statement of Work either by Bob Richards' acquiescence or because Jim Cantrell had authority to agree to the Statement of Work on behalf of Moon Express.  In this case, the parties agree that Jim Cantrell was assigned by Moon Express to negotiate a Statement of Work for the Flight Software Contract.  The parties dispute whether Jim Cantrell decided on a Statement of Work with IM and, if he did, whether he had the authority to do so without the approval of Bob Richards or others.  The questions you must decide are, first, whether Mr. Cantrell had actual authority to bind Moon Express with respect to the Statement of Work and, second, if he did not have actual authority, whether Mr. Cantrell had apparent authority to bind Moon Express.

A party is bound by contract terms if the person negotiating—known as an agent—had actual or apparent authority to do so.  An agent is a person who represents another person or entity in dealing with a third party.  The person or entity for whom the agent performs is called the principal.  In this case, you must decide whether Jim Cantrell had actual or apparent authority to act as an agent for the principal, Moon Express.

An agent acts with actual authority when the agent reasonably believes, in accordance with the principal's words or conduct, that the principal wishes the agent to act on the principal's behalf.  Actual authority may be given by the principal to the agent in writing or by an oral directive.  Actual authority can exist if the agent reasonably believed he had authority as a result of the principal's actions.

Apparent authority arises from the interactions between the principal and a third party,

such as interactions between Moon Express and Intuitive Machines.  Apparent authority may be found to exist when the principal creates, by its words or conduct, the reasonable impression in a third party that the agent had authority to act on behalf of the principal.  Apparent authority may be found to exist where, as between the principal and the agent, there is no authority to act. Neither the agent nor the principal need to be under the impression that such authority exists.

## RECOVERY FOR BREACH OF CONTRACT

If Moon Express or Intuitive Machines breached either the TRV Contract or the Flight Software Contract, it would be liable for damages to the other party.

To establish that Intuitive Machines is liable to Moon Express for breach of contract, Moon Express must prove that one or more material terms of either the TRV Contract or the Flight Software Contract has not been performed and that Moon Express has sustained damages as a result of Intuitive Machines' failure to perform.

Similarly, to establish that Moon Express is liable to Intuitive Machines for breach of contract, Intuitive Machines must prove that one or more material terms of either the TRV Contract or the Flight Software Contract has not been performed and that Intuitive Machines has sustained damages as a result of Moon Express's failure to perform.

**PERFORMANCE**

Performance is the successful completion of a contractual duty.  Full performance consistent with the terms of the agreement discharges the contractual duty.  Full performance means not only performance of the character, quality and amount required, but also performance within the agreed time.

## SUBSTANTIAL PERFORMANCE

A good-faith attempt to perform a contract, even if the attempted performance does not precisely meet the contractual requirements, is considered complete if the substantial purpose of the contract is accomplished.  This means that the contract has been completed in every significant respect.  For example, if a builder completes an office tower but fails to apply a second coat of paint to the basement walls, the builder will have substantially performed the contract.  This situation is known in the law as substantial performance.  In that example, the builder would be entitled to payment on the terms of the contract but would also be liable to the office tower's owner for the cost of painting the basement walls.

## CONSTRUCTION OF CONTRACT

In order to determine whether either party breached the Flight Software or TRV Contracts, you will need to determine the meaning of the terms within each contract.

The Court has decided as a matter of law that one term in the TRV Contract is unambiguous, meaning that there is only one reasonable interpretation of the contractual term. You must interpret that unambiguous term as I instruct you, and you may not weigh any extrinsic evidence to ascribe a different meaning to the following contractual term:

The term "TRV" in the TRV Contract applies only to the actual TRVs that were to be manufactured for ME.  It does not refer to IM's (or any other) website or to prototypes designed to be tested on Earth.

Certain other terms of the TRV Contract are ambiguous, and you will need to determine the meaning of those terms.  An ambiguous contractual term is one that, in the context of the overall structure of the contract, is susceptible to more than one reasonable interpretation.

There are certain rules to consider in interpreting contractual terms that appear ambiguous or unclear.

First, you should read the contract as a whole, giving effect to all its provisions so as not to render any part of the contract meaningless or illusory.  Do not allow the meaning of a particular portion of the agreement to control the meaning of the entire agreement where it would be against the agreement's overall scheme or plan.

Second, if the contract's language is susceptible of two constructions, one of which makes it a fair, customary, and reasonable contract that a prudent person would make, while the second interpretation makes the contract inequitable, unusual, or one that a prudent person would likely not make, the first interpretation must be preferred.

Third, you should not interpret a contract term in a way that would produce absurd results.

Fourth, to determine the parties' intent when there are ambiguous terms, you may consider admissible objective evidence surrounding the creation and execution of the contract. Such evidence may include overt statements and acts between the parties, the drafting history of the contract, the business context, prior dealings between the parties, the parties' course of performance, and business custom and usage in the industry.

Finally, you should not consider any evidence of the parties' private, subjective feelings about the meaning of the contractual terms if there is no evidence that those subjective feelings about the meaning of the contract were communicated to the other party.  In addition, a party's subjective interpretation is rejected if he knew the other party had a different interpretation but did not refute the other party's interpretation before the contract was signed.

## MATERIAL AND IMMATERIAL BREACH

There are two kinds of breach of contract: material breaches and immaterial breaches. A material breach occurs when a party's failure to perform an obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract. If one party materially breaches a contract, the other party is excused from performing its duties under the contract.  The first party to materially breach a contract cannot claim the other party breached the contract if the other party subsequently refuses to perform.

An immaterial breach involves something which is not an essential feature of the contract.  If a breach is immaterial, performance by the injured party is not excused and refusal to perform by the injured party may itself constitute a breach.  In other words, an immaterial breach by one party, while giving rise to a claim for damages, will not necessarily terminate the obligations of the injured party to perform under the contract.

In determining whether a breach is material, you may consider:

(1) The extent to which the injured party will be deprived of the benefit which it reasonably expected;

(2) The extent to which the injured party can be adequately compensated for the part of that benefit of which it will be deprived;

(3) The extent to which the party failing to perform will suffer forfeiture, meaning a loss of money or property without compensation;

(4) The likelihood that the party failing to perform will cure its failure, taking account of all the circumstances including any reasonable assurances; and

(5) The extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing.

## ANTICIPATORY BREACH

A party can breach a contract by clearly, distinctly, and unequivocally stating an intention not to perform its obligations under the contract.  This is called an "anticipatory breach" or "repudiation."

A party may repudiate a contract through:

(1) a statement that, reasonably interpreted, indicates that the party will not or cannot perform its obligations under the contract;

(2) a statement that, reasonably interpreted, indicates that the party does not intend to perform its obligations unless terms different form the original contract are met by the other party; or

(3) a voluntary and affirmative act rendering performance of the contract apparently or actually impossible.

An anticipatory breach by one party immediately discharges the other party from its remaining duties of performance, in addition to giving the injured party an immediate claim to damages for total breach.  One party's belief that the other party is in breach of an agreement does not entitle it to repudiate if the other party is not, in fact, in breach at that time.  A mere expression of doubt is not a repudiation.

**PERFORMANCE PREVENTED BY A PARTY TO THE CONTRACT**

A party to a contract may not prevent another party from performing its contractual duties and then claim that the other party has breached the contract or failed to complete its terms.

If you find that Moon Express prevented Intuitive Machines from fulfilling its duties under the Flight Software Contract or interfered with Intuitive Machines' ability to perform its duties under the Flight Software Contract, then you must find that Moon Express breached the Flight Software Contract and that Intuitive Machines was excused from performance.

A party who does not perform a contractual obligation because the other party either prevented or interfered with the performance of that condition is not liable for a breach of contract. On the other hand, a party who prevents or interferes with the other party's performance of a condition is not excused from his obligations under the contract and breaches the contract if he does not perform his obligations. One who himself induces the failure of the other to perform within the time agreed upon cannot take advantage of such failure.

For example, a farmer who contracts to pay a builder to put up a barn on the farmer's land must make the land available to the builder so that the work may be done. Likewise, the farmer must not interfere with the progress of the work. If the farmer does not make the land available to the builder, the builder is excused from building the barn. The farmer is not excused, on the other hand, from making payment to the builder.

There is an exception to the prevention doctrine, however. The prevention doctrine does not apply where, under the contract, one party assumes the risk that fulfillment of the condition precedent will be prevented.

38

**WAIVER**

Waiver is an affirmative defense to a claim that a contract term was breached.  Waiver is the voluntary relinquishment or abandonment of a legal right or advantage.  A waiver may be expressly made or implied from conduct or other evidence.  The party alleged to have waived a right must have known about the right and intended to give it up.

These elements must be proved by clear and convincing evidence and the facts relied upon to prove waiver must be unequivocal.  As a reminder, clear and convincing evidence is a stricter standard of proof than proof by a preponderance of the evidence, which merely requires proof that something is more likely than not.  To establish proof by clear and convincing evidence means to prove something that is highly probable, reasonably certain, and free from serious doubt.

In this case, Intuitive Machines contends that certain payments made by Moon Express were late under the TRV Contract.  If you find that certain payments were late, you must then determine whether IM waived its right to complain about ME's payments by accepting them.

In addition, Moon Express contends that Phase A in the Flight Software Contract was only complete, and Intuitive Machines was only entitled to the second payment for Phase A, once IM's software was demonstrated on a terrestrial tethered test using one of ME's terrestrial test vehicles with a Beaglebone Black processor.  If you find that Phase A required such a terrestrial tethered test in order for Phase A to be complete, you must then determine whether ME waived its right to have IM conduct the terrestrial tethered test.

Finally, Moon Express contends that Intuitive Machines did not ensure that all components of the TRV and its software were free from external dependencies, conflicts, and the need for consent from third parties, as stated in Section 7.1 of the TRV Contract.  If you find that

there was such a requirement in the TRV Contract and that Intuitive Machines failed to comply

with that requirement, you must then determine whether Moon Express waived that requirement.

## ESTOPPEL

Estoppel is an affirmative defense to a breach of contract claim.  When the conduct of a party to a contract intentionally or unintentionally leads another party to the contract, in reasonable reliance on that conduct, to change its position to its detriment, then the original party cannot enforce a contractual right contrary to the second party's changed position.  This is known in the law as estoppel.  Reasonable reliance means that the party that changed its position must have lacked the means of knowing the truth about the facts in question.

Estoppel must be proved by "clear and convincing" evidence.  As a reminder, clear and convincing evidence is a stricter standard of proof than proof by a preponderance of the evidence, which merely requires proof that something is more likely than not.  To establish proof by clear and convincing evidence means to prove something that is highly probable, reasonably certain, and free from serious doubt.

In this case, Moon Express contends that Phase A in the Flight Software Contract was only complete, and Intuitive Machines was only entitled to the second payment for Phase A, once IM's software was demonstrated on a terrestrial tethered test using one of ME's terrestrial test vehicles with a Beaglebone Black processor.  If you decide there was such a requirement, you must decide whether Moon Express is estopped from asserting a claim that IM breached the Flight Software Contract by failing to demonstrate its software on a terrestrial tethered test on one of ME's terrestrial test vehicles running a Beaglebone Black processor.

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

Moon Express has asserted a claim against Intuitive Machines for breach of the covenant of good faith and fair dealing.  The covenant of good faith and fair dealing imposes on parties to a contract an obligation to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the benefits of the bargain.  It is a way to imply terms into a written agreement, whether to analyze unanticipated developments or fill gaps in the contract's provisions.  The implied covenant of good faith and fair dealing is a part of every contract; however, it cannot be used to circumvent the parties' bargain, or to create obligations beyond what the parties agreed to.  You must assess the parties' reasonable expectations at the time of contracting.  An implied condition is one that the parties would have agreed to if they had thought to negotiate about that matter.  There must be a contract in effect in order for there to be a breach of the implied covenant of good faith and fair dealing.

To succeed on this claim, Moon Express must prove: (1) a specific implied contractual obligation; (2) a breach of that obligation by the other party; and (3) resulting damages.  In order to succeed on its claim, Moon Express must also prove that Intuitive Machines acted arbitrarily and unreasonably, thereby frustrating the fruits of the bargain that ME reasonably expected.

Moon Express contends that Intuitive Machines had an implied duty under the TRV Contract to maintain the viability of the CASIS Grant Agreement, which Intuitive Machines was required to use "all reasonable efforts" to transfer to Moon Express.  If you determine that this was an implied condition of the TRV Contract, that Intuitive Machines cancelled the CASIS Grant Agreement, that Intuitive Machines did so arbitrarily and unreasonably, thereby frustrating the fruits of the bargain that Moon Express reasonably expected, and that the cancellation of the CASIS Grant Agreement caused Moon Express damage, then ME is entitled to damages for

breach of the covenant of good faith and fair dealing.

## DAMAGES

Once you decide whether a party has proven its claims as I have just described, you then must determine how much in monetary damages to award to the party you have found in favor of.

ME seeks the following monetary damages for its claims, plus interest and costs allowed by law:

Recovery of payments made to IM:

(a)      Flight Software Contract:  $1,125,000.00

(b)      TRV Contract: $2,092,598.00

Damages incurred due to IM's actions:

(a)      $15,000.00 for expenses and employee time fixing Special IP issues.

IM seeks the following monetary damages for its claims, plus interest and costs allowed by law:

Payments and equity withheld by ME:

(a) Flight Software Contract:  $1,125,000.00 + $2,250,000 in equity in Moon Express.

(b) TRV Contract:  $520,000

Damages incurred due to ME's actions:

(a) $212,000 in expenses and employee time winding down the TRV project.

Your decision to award a party damages is not an all or nothing decision.  You may find that a party has proved more or less damages than the amounts claimed, based on the evidence presented at trial.

## DAMAGES FOR BREACH OF CONTRACT

If you find that one party committed a breach of contract, then the other party is entitled to compensation in an amount that will place it in the same position it would have been in if contract had been properly performed.

A party that is harmed by a breach of contract is entitled to damages in an amount calculated to compensate it for the harm caused by the breach.  The injured party must establish with reasonable certainty that there is a causal connection between the breach and the injured party's losses.

Under Delaware law, the normal measure of damages for breach of contract is called "expectation damages."  Expectation damages should place the injured party in the same position it would have been in if the contract had been performed.  Expectation damages thus require the breaching promisor to compensate the injured party for its reasonable expectation of the value of the breached contract.

In some cases, where there has been a total, or material, breach of the contract, an appropriate amount of damages is measured by restitution.

Restitution damages are measured by (a) the reasonable value to the breaching party of what he received in terms of what it would have cost him to obtain it from another person in the claimant's position, or (b) the extent to which the breaching party's property has been increased in value or his other interests advanced.

The purpose of restitution is to restore the parties to their status quo prior to entering into the contract.  Restitution damages are inappropriate where the breach was immaterial, or where the injured party does not return the performance tendered by the breaching party, or where the injured party received some benefit from the breaching party's partial performance of the

45

contract, or when it would provide a windfall to the injured party.

## DAMAGES FOR BREACH OF THE COVENANT
## OF GOOD FAITH AND FAIR DEALING

The measure of damages is the same for breach of the covenant of good faith and fair dealing as for breach of contract.

**SETOFF**

The party challenging damages has the burden to prove that a setoff should be applied to the damages claim and the value of such set off.  In this case, if IM contends that ME's monetary damages should be reduced by some benefit received, then IM has the burden of proving the value of such benefit by a preponderance of the evidence.

**INSTRUCTIONS TO BE CONSIDERED AS A WHOLE**

I have read a number of instructions to you.  The fact that some particular point may be covered in the instructions more than some other point should not be regarded as meaning that I intended to emphasize that point.  You should consider all the instructions.

## COURT IMPARTIALITY

Nothing I have said since the trial began should be taken as an opinion about the outcome of the case.  You should understand that no favoritism or partisan meaning was intended in any ruling I made during the trial or by these instructions.  Further, you must not view these instructions as an opinion about the facts.  You are the judges of the facts, not me.

**DUTIES OF JURORS**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I gave you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on each of the issues presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I gave you, even if you personally disagree with them. This includes the instructions that I gave before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. I would like to suggest that you discuss the issues fully, with each of you having a fair opportunity to express your views, before committing to a particular position. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.  You must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.  Your votes should stay secret until you are finished.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you.  You should not seek or obtain such information and it must not influence your decision in this case.

Your verdict must represent the considered judgment of each juror.  In order for you as a

jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  I will read it to you in a moment.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and you will all sign it. You will then return to the courtroom and your foreperson will give your verdict.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.